UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DOUGLAS JOHN FITZGERALD,<br><br>Defendant. | Case No. 1:09-cr-00113-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant's Motion for Release on Bond Pending Appeal (Dkt. 109). In his Motion, he requests an order vacating the decision to deny him leave to withdraw his guilty plea and allowing him to be released on bond pending the outcome of his appeal. Having reviewed Defendant's supporting memorandum, the Government's Response (Dkt. 111), and Defendant's Reply (Dkt. 114), the Court enters the following Order denying the Motion.

## BACKGROUND

A detailed recitation of the procedural history of this case is necessary to provide context for the Court's ruling on the pending Motion and the underlying Motion to Withdraw Guilty Plea.

On May 13, 2009, the Government filed an Indictment against Defendant charging one count of corrupt endeavor to obstruct and impede the due administration of the Internal Revenue laws in violation of 26 U.S.C. § 7212(a) and six counts of attempt to evade and defeat tax in violation of 26 U.S.C. § 7201. *Indictment*, Dkt. 1. On November 23, 2009, he was represented by Federal Defender Thomas Monaghan at his arraignment and detention hearing, and he was released pending trial with conditions. *Minutes*, Dkt. 7, 8; *Order*, Dkt. 9. On February 23, 2009, Federal Defender Teresa Hampton filed a Notice of Appearance and Association as Co-counsel (Dkt. 16).

On September 3, 2010, after two lengthy trial continuances granted at Defendant's request and the Government's filing of several motions in limine and notices of intent to produce evidence, the Government filed a Plea Agreement signed by Defendant under which he agreed to plead guilty to one count of attempt to evade income taxes. On September 14, 2010, the day set for the change of plea hearing, Teresa Hampton and Thomas Monaghan filed a Motion to Withdraw (Dkt. 41) and Terrance L. McCauley filed an Application for Admission Pro Hac Vice (Dkt. 42) with Robert Aldridge as local counsel.[1] Defendant advised at the hearing that he wanted to proceed to trial with his newly retained counsel. Trial was reset for September 27, 2010.

Mr. McCauley filed a motion to continue the trial at least 120 days to review the voluminous discovery produced by the Government. *Motion to Continue*, Dkt. 45.

---

[1] On November 19, 2010, John Meienhofer substituted for Robert Aldridge as local counsel for Mr. McCauley.

Although suggesting that Defendant retained new counsel to delay trial and sentencing, the Government agreed to a continuance. *Response*, Dkt. 46. The Court thereafter reset the trial for February 22, 2011. *Order*, Dkt. 48.

In December of 2010 and January of 2011, the parties filed various motions in limine. Shortly before trial, Defendant filed a Motion to Dismiss (Dkt. 60) alleging violation of the Speedy Trial Act which the Court denied on February 1, 2011. *Mem. Dec. and Order*, Dkt. 62. On February 4, 2011, the Government filed a virtually identical Plea Agreement (Dkt. 63) signed by Defendant which, like the first Plea Agreement, provided for a plea to one count of attempt to evade income taxes. Defendant entered his plea before this Court on February 8, 2011, after a lengthy plea hearing. *Minutes*, Dkt. 67. Sentencing was set for May 5, 2011. *Id.*

On April 18, 2011, Defendant, through Mr. McCauley, requested a continuance of the sentencing to allow more time for acquiring documents from Defendant's banks in the Philippines to refute the Government's claims that he used for personal and private benefit money originally declared as being for religious or charitable purposes. *Motion to Continue*, Dkt. 69. The Court granted the motion and reset the sentencing for July 14, 2011. *Order*, Dkt. 70.

On July 1, 2011, Defendant filed a *pro se* "Notice of Termination for Lack of Effective Assistance of Counsel for Good Cause Shown" (Dkt. 73) in which he alleged the counsel had essentially "done nothing" for the $50,000 he paid him thereby

effectively forcing him to enter the Plea Agreement.[2] He also filed a "Notice of Mistake, Notice of Withdrawal of Consent to Not Guilty Plea Agreement for Mistake for Good Cause, conditional Acceptance of Charges" (Dkt. 74) in which he claimed that the "mistaken and erroneous advice of counsel" induced him to enter the Plea Agreement. He also requested appointed counsel.

On July 5, 2011, Defendant filed another *pro se* "Notice of Termination for Lack of Effective Assistance of Counsel for Good Cause Shown" (Dkt. 75) in which he alleged that he had been forced to lie in the Plea Agreement, that counsel had never assisted him in a defense, that counsel failed to communicate with him, and that counsel failed to provide exculpatory evidence to rebut the Presentence Report or to file pleadings as requested.

On July 8, 2011, the Government filed its Response (Dkt. 76) urging the Court to deny Defendant's *pro se* motions arguing that the motions were further delay tactics and that Defendant was "playing games with the Court." Together with its Response, the Government filed its Notice of Sentencing Position (Dkt. 77) in which it advised the Court that it was changing its prior position on sentencing. The Government now argued that Defendant should not receive credit for acceptance of responsibility (based in part on Defendant's misleading his counsel and the Court that he had paid $308,912 in restitution

---

[2] At the hearing on his *pro se* motion, Defendant denied that he paid Mr. McCauley $50,000 saying "[i]t was stock that I had . . . . $25,000 . . . ." *Sent. Tr.* at 7. At the same hearing, he later stated that "I had to borrow the money." *Sent. Tr.* at 30.

when in fact he had submitted "bogus" "promissory notes") and that he should receive a two-level enhancement for obstruction of justice (for submitting worthless promissory notes and a false tax return for 2005 to the Probation Officer), thus effectively increasing Defendant's guideline range by five levels.

Also on July 8, 2011, Mr. McCauley filed a motion to allow him to withdraw on the grounds that Defendant had demanded several times that he cease representation and that communications between them had broken down completely. *Motion to Withdraw*, Dkt. 79.

On July 11, 2011, Defendant filed a *pro se* Motion to Withdraw Plea of Guilty (Dkt. 82) and *pro se* Motion to Cancel Sentencing (Dkt. 83). On July 12, 2011, Mr. McCauley filed a sentencing memorandum on Defendant's behalf. *Sent. Mem.*, Dkt. 84.

On July 13, 2011, the Government filed a Notice of Exhibits together with the exhibits themselves to demonstrate that Defendant "understands the legal process and acts intentionally to delay it" and that "he refuses to recognize the jurisdiction of the Court, except in lawsuits that he files himself." *Notice* at 2, Dkt. 86.

On July 14, 2011, the Court granted defense counsel's Motion to Withdraw, declined to appoint counsel without a new financial affidavit given questions raised by Defendant's ability to retain counsel, conducted a *Faretta* hearing, concluded that Defendant could represent himself, denied his *pro se* motions, and proceeded to sentencing. *Minutes*, Dkt. 89.

At the sentencing portion of the hearing, the Court agreed with the Government that Defendant should not receive an adjustment for acceptance of responsibility and imposed a two-level enhancement for obstruction of justice. *Id*. The Court sentenced Defendant to the bottom of the resulting 51 to 60-month guideline range. The Court then ordered that Defendant be taken into custody immediately based on its concern that Defendant would not self-report. *Id*.

During his sentencing argument, Defendant submitted papers that were marked as Exhibit B. Dkt. 91. The documents were entitled, "Notice of Special Appearance Non Acceptance of Offer to Contracts Entitled Rule 11 Plea Agreement Indictment 071311-djf." Dkt. 91. Attached to that document was (1) a copy of the Plea Agreement and Indictment bearing the words, "I DO NOT ACCEPT THIS OFFER, I DO NOT CONSENT TO THESE PROCEEDINGS, AND I DO NOT CONSENT TO ACT AS SURETY," and (2) ADMINISTRATIVE NOTICE AND DEMAND FOR IDENTIFICATION AND CREDENTIALS QUO WARRANT for Elizabeth Smith and B. Lynn Winmill." Dkt. 91-1 (all caps in original). The Court noted that they appeared to be similar to documents that the Court had received in other cases in which a defendant challenged the Court's jurisdiction.

On July 25, 2011, Defendant filed a Notice of Appeal. Dkt. 94. He filed the pending Motion three months later.

## STANDARD OF LAW

In order to be released pending appeal, a defendant must demonstrate that he or she meets certain statutory requirements:

>   (1) that the defendant is not likely to flee or pose a danger to the safety of any other person in the community if released;
>
>   (2) that the appeal is not for the purpose of delay;
>
>   (3) that the appeal raises a substantial question of law or fact; and
>
>   (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

*United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985) (discussing 18 U.S.C. § 3143(b)(1)).[3]

---

[3] The text of the relevant portion of the statute is as follows:

". . . the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds –

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely result in –

>   (i) reversal,
>   (ii) an order for a new trial,
>   (iii) a sentence that does not include a term of imprisonment, or
>   (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus to expected duration of the appeal process." 18 U.S.C. § 3143(b)(1).

The Ninth Circuit has considered the operative statutory phrase "a substantial question of law or fact likely to result in a new trial" and concluded "that the word 'substantial' defines the level of merit required in the question raised on appeal, while the phrase 'likely to result in reversal' defines the type of question that must be presented." *Handy*, 761 F.2d at 1281. *Handy* adopted the "well-established, customary meaning" of "substantial question" and concluded that an issue is substantial if it is "fairly debatable" or "fairly doubtful" or "of more substance than would be necessary to a finding that it was not frivolous." *Id*. at 1282-83 (internal quotation marks and citations omitted).

## DISCUSSION

The Government contends that Defendant has not shown that he is unlikely to flee if released. Furthermore, it contends that Defendant's appeal is for the purpose of delay and that it raises no substantial question of law or fact. The burden of proof on these issues rests with Defendant. *See United States v. Wheeler*, 795 F.2d 839, 840 (9th Cir. 1986); *see also Handy*, 761 F.2d at 1283 (noting that the Bail Reform Act of 1984 made significant changes "designed to toughen the law with respect to bail pending appeal" including "shift[ing] the burden of proof from the government to the defendant" making it "considerably more difficult . . . to be released on bail pending appeal").

### 1. Risk of Flight

As relevant here, the threshold question to be resolved in determining whether to grant release pending appeal is whether a defendant presents a risk of flight. 18 U.S.C. §

3143(b)(1)(A). A defendant has the burden or proving by clear and convincing evidence that he is not likely to flee. *Id*.

In his Motion, Defendant relies on the Court's previous finding that he was not a flight risk when allowing him to be released pending sentencing and because he was a "model defendant" while on release. *Motion for Release* at 2; 7.

A different standard for release applies at the various stages of a prosecution with the burden and requisite showing becoming increasingly more onerous as the case proceeds. The initial finding made following Defendant's detention hearing was made pursuant to 18 U.S.C. § 3142(a)-(e) which states that a defendant must be released unless the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required . . . ." Once a defendant is pending sentencing, the Court must detain him unless it "finds by clear and convincing evidence that [he] is not likely to flee . . . if released." *See* 18 U.S.C. § 3143(a). Finally, once a defendant has been sentenced and is pending appeal, the Court must detain him unless it makes the same determination regarding risk of flight and also meets the other three criteria discussed above. *See* 18 U.S.C. § 3143(b).

Here, because the Government did not seek detention pending sentencing after Defendant entered his plea, the Court never made the risk of flight finding under the higher "pending sentencing" standard. *Plea Tr.* at 52. The Court's initial finding under the lesser standard where release is presumed is not determinative of the issue under the

higher pending sentencing and pending appeal standards where detention is presumed.

In responding to the Government's arguments that he did not meet the requisite burden, Defendant offers several other grounds for finding that he is not a flight risk:

1. He surrendered his passport to the U.S. Marshal's office making it "virtually impossible for him to board any airline destined for another country."

2. His wife is in the process of emigrating from the Philippines, and his entire family lives in the United States.

3. He is in poor health and needs immediate medical care in the United States which is not being provided by the Bureau of Prisons.

4. He is willing to be subjected to any "reasonable conditions" that would restrict his movements.

5. His only ties outside the United States were to his church in the Philippines where he was arrested.

6. He is confident that the Ninth Circuit will reverse the denial of his motion to withdraw his plea and reverse the denial of his motion to dismiss due to a Speedy Trial Act violation.

*Reply* at 1-2.

Defendant concludes that he knows that he could be easily and quickly apprehended if he fled, and that "[t]he Government has certainly not offered anything that proves [he] would be a flight risk." *Id*. However, as stated above, Defendant, not the Government, bears the burden on the flight issue.

Four of Defendant's six points regarding flight refer to the likelihood of his

leaving the country. Defendant did indeed go to the Philippines in 2005 after being advised of the criminal investigation which could be a concern here. *Response* at 3 (citing Dkt. 35-3 at 4). However, that concern is considerably mitigated by the fact that he no longer possesses his passport. Nevertheless, fleeing out of the country is not the Court's only concern. Defendant could very well abscond to anywhere in the United States.

Defendant's remaining two justifications for release are not persuasive on the flight issue. First, the fact that Defendant is willing to be subjected only to what he considers "reasonable conditions" if released indicate a continuance of his unwillingness to submit to the jurisdiction of the Court. Second, his confidence that he will prevail on his claims at the Ninth Circuit are merely a layman's view of the strength of his case and is irrelevant to the issue at hand.

The Court was persuaded by the Government's argument at sentencing that Defendant had gone within the preceding months or weeks "from being compliant in the process to being resistant in the process, to filing frivolous motions, to claiming that he didn't do things he has already admitted . . . ." *Sent. Tr.* at 94. The Government added that "[h]e shows more and more desperation to get out of the prison sentence and to not be held accountable." *Id*. The Court concurred, especially given Defendant's filings at the start of his sentencing argument challenging the jurisdiction of the Court. *Id*. at 95-96.

The Court also considered the Government's sentencing exhibit list detailing evidence of prior delay tactics. It found particularly significant Defendant's signing (along with several other individuals) an "Amicus Curia, Notice of Invocation of Divine Justice, Filed as a Habeas Corpus on behalf of Fred Covey, a Criminal Tax Defendant." *Notice of Exhibits*, Ex. 7, Dkt. 86-7. Fred Covey had been sentenced on tax charges by this Court and granted the right to voluntarily surrender. However, Mr. Covey violated the Court's order by failing to surrender after the Bureau of Prisons designated an institution for service of his sentence.[4]

Based on the totality of the circumstances, the Court determined that there was a risk that Defendant would not report. Now that Defendant has been sentenced to 51 months, the Court agrees with the Government that his incentive to flee would be much higher – whether to the Philippines or simply somewhere in the United States – than it was before sentencing when there was still hope for a sentence of probation. The Court felt strongly at the sentencing hearing that Defendant was a flight risk. Defendant has offered nothing new to change the Court's perception in the context of release pending appeal.

The Court's finding that Defendant has not met his burden of showing by clear and convincing evidence that he is not a flight risk ends the inquiry at the first step.

---

[4] Mr. Covey was charged with, and pleaded guilty to, Failure to Surrender in violation of 18 U.S.C. § 3146(a)(2). This Court sentenced him to a term of imprisonment of four months to be served consecutively to the sentence imposed in District of Idaho Case No. 1:09-cr-00213-BLW. *See Judgment (Dkt. 13), United States v. Fred Covey*, District of Idaho Case No. 1:10-cr-00196-BLW.

However, the Court will also address the remaining steps as well.

2.      **Purpose of Delay**

In opposing Defendant's *pro se* motions, the Government argued vociferously that the motions were simply a continuation of a long pattern of delay. The Government now believes that the appeal is a further continuation of that pattern. *Response* at 3. Defendant contends in his Reply, however, that he appealed not to delay but because he believe the Court erred in denying his motions. *Reply* at 2. He argues that delay would only hurt him, not help him. *Id*.

While not specifically finding that the motions were brought for the purpose of delay, the Court stated its belief that the timing of the request for new counsel suggested it was probably made for purposes of delay. *Sent. Tr.* at 10. The Court also noted in the sentencing portion of the hearing that Defendant's behavior and filings prior to sentencing demonstrated an "attempt to avoid or put off the sentencing." *Sent. Tr.* at 85-86. The Court was clearly concerned with the apparent pattern of delay.

The Court recognizes that Defendant may believe he has valid grounds for appeal. However, on balance, filing an appeal and seeking release pending that appeal despite the appeal waiver in his Plea Agreement and the apparent weakness of his claim is indicative of a further attempt to delay serving his sentence.

3.      **Substantial Question of Law or Fact**

As state above, the Ninth Circuit has concluded "that the word 'substantial'

defines the level of merit required in the question raised on appeal." *Handy*, 761 F.2d at 1281.  Examples of substantial questions are those that are "novel and not readily answerable," "new and novel," involve "unique facts not plainly covered by the controlling precedents," or involve "important questions concerning the scope and meaning of decisions of the Supreme Court." *Id.* at 1281.  Defendant's sole issue on appeal does not fall into any of those categories.

Defendant claims on appeal that the Court erred in denying his motion to withdraw his plea based on his argument that at the time he entered his plea, he did not realize that he had waived his right to appeal the denial of his Speedy Trial Act motion to dismiss.  The Court denied the motion because any delay was caused by Defendant's own requests for additional time, and the Court had made the requisite findings that each delay was properly excludable. *Mem. Dec. and Order*, Dkt. 62.  Defendant also alleges that counsel had not advised him that the denial was appealable.

Denial of a motion to withdraw from a guilty plea is reviewed for an abuse of discretion. *See United States v. Briggs*, 623 F.3d 724, 727 (9th Cir. 2010) (citing *United States v. Ensminger*, 567 F.3d 587, 590 (9th Cir. 2009)).  An abuse of discretion occurs when a court "rests its decision on an inaccurate view of the law, or on 'a clearly erroneous finding of fact.'" *Ensminger*, *id.* (internal citations omitted).  Neither is present here.  Therefore, Defendant cannot demonstrate that he has raised a substantial issue of law or fact on appeal.

### A. Inaccurate View of the Law

In order to withdraw a guilty plea after it has been accepted, a defendant has the burden of establishing a "fair and just reason" for doing so. Fed. R. Civ. P. 11(d)(2)(B). Fair and just reasons include "inadequate Rule 11 plea colloquies, newly discovered evidence, intervening circumstances, or any other reason for withdrawing the plea that did not exist when the defendant entered his plea." *United States v. Jones*, 472 F.3d 1136, 1141 (9th Cir. 2007). The Court was well aware of this standard at the time it denied the motion to withdraw. *Sent. Tr.* at 43-50 (discussing and applying each factor). Therefore, the Court did not rest its decision on an inaccurate view of the law.

### B. Clearly Erroneous Finding of Fact

At the hearing, the Court noted that it had specifically discussed with Defendant at the change of plea hearing that he had waived most, if not all, of his Speedy Trial Act rights and that what rights were preserved were specifically denominated in the Plea Agreement. *Sent. Tr.* at 46. Defendant correctly alleges that, in fact, the Court had not specifically mentioned waiver of the Speedy Trial Act issue at the change of plea hearing. *Plea Tr.* at 46.

It appears that the Court misspoke and had intended to state, as it does in virtually all change of plea hearings, that Defendant had waived some or all of his *appeal* rights and not some or all of his *Speedy Trial Act* rights. In any event, the Court did advise Defendant at the change of plea hearing that his Plea Agreement contained a provision

that waived or gave up some or all of his rights to appeal. *Id*. The Plea Agreement, which Defendant claimed under oath that he had reviewed with his attorney and understood, provided for a right to appeal in three circumstances, none of which is relevant here. *Plea Agreement* at VI.B., Dkt. 63.

While Defendant is apparently alleging that the Court abused its discretion by resting its decision on the clearly erroneous finding of fact that it had specifically discussed the waiver of the Speedy Trial Act issue before Defendant entered his plea, the Court does not view it as such. Rather, the Court based its decision not on that one fact but on the totality of the circumstances and other factors including the complete lack of merit of Speedy Trial Act issue given that Defendant had requested all of the delays. *Sent. Tr.* at 46-47. *See also Sent. Tr.* at 49-50.

Defendant also appears to raise an ineffective assistance of counsel claim based on the alleged failure to advise him of the appealability of the Order dismissing his Speedy Trial Act claim. However, that does not raise a substantial issue on appeal because with limited exceptions not applicable here ineffective assistance of counsel claims are not generally addressed on appeal. *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003)

**4.     Likely to Result in Reversal or Order for a New Trial**

The phrase "'likely to result in reversal' defines the type of question that must be present." *Handy*, 761 F.2d at 1281. The Government concedes that if Defendant were to

prevail on appeal and be permitted to withdraw his plea, he would effectively be granted a new trial.  Stated another way, if Defendant prevailed on appeal, the order denying the motion to withdraw the plea would be reversed.  Therefore, Defendant has satisfied the fourth element.  However, satisfying the fourth element alone is not sufficient for prevailing on a motion for release pending appeal.

## CONCLUSION

Defendant asks the Court for an order vacating its decision to deny him leave to withdraw his guilty plea and allowing him to be released on bond pending the outcome of his appeal.  The Court must deny both requests.  This Court has no jurisdiction to reopen Defendant's case and vacate its order denying the motion to withdraw the plea.  That issue is now before the Ninth Circuit and must be decided on appeal.

The Court has granted release pending appeal in only a handful of cases given the high burden placed on defendants seeking release pending appeal.  The Court finds that this Defendant, like most defendants, has not met that burden here.  Most importantly, Defendant has not provided clear and convincing evidence that he is not a flight risk.  He has offered nothing that was not already before the Court when the Court determined that there was a strong likelihood that he would not voluntarily surrender.

Even if the Court determined that Defendant was not a flight risk, it would still deny the motion for release pending appeal.  Defendant's current contention that his appeal is not for the purpose of delay is undercut by his long history of delay during the

underlying proceedings. Finally, Defendant's claim that the Court should have granted his motion to withdraw his plea does not present a substantial question.

### ORDER

**IT IS ORDERED** that Defendant's Motion for Release Pending Appeal (Docket No. 109) is **DENIED**.

DATED: **February 25, 2012**

_____
Honorable B. Lynn Winmill
Chief U. S. District Judge